**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| TIMOTHY ROBINSON,<br><br>       Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br><br>       Defendant. | Civil Action No. 07-1825 (SDW)<br><br>**OPINION and ORDER**<br><br>November 20, 2008 |

WIGENTON, District Judge

  Before the Court is Plaintiff Timothy Robinson's ("Plaintiff") appeal from Administrative Law Judge, Dennis G. Katz's ("ALJ"), denial of Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") benefits under Titles II and XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1381-1381(c), pursuant to 42 U.S.C. § 405(g). This appeal is decided without oral argument pursuant to Fed. R. Civ. P. 78.

  Plaintiff claims that the ALJ's January 6, 2006 decision ("ALJ Reconsideration Decision") was not supported by substantial evidence and therefore requires reversal, or alternatively, remand to the Commissioner for further proceedings. In opposition, Defendant argues that the ALJ's findings are supported by substantial evidence and should be upheld. The Court, having considered the parties' submissions and for the reasons set forth below, AFFIRMS the ALJ's decision.

## I. Jurisdiction and Venue

The Court has subject matter jurisdiction over this matter pursuant to 42 U.S.C. § 405(g), 1383(c)(3) and 5 U.S.C. § 706, as there has been a final decision by the Commissioner and the matter involves DIB and SSI claims. Venue is proper pursuant to 28 U.S.C. § 1391(b).

## II. Factual Background

Plaintiff filed an application for Disability Insurance Benefits on November 29, 2000. (ALJ Recon. Dec. at 1.) Plaintiff alleges that he has been unable to work as a delivery person since September 9, 1999 because of back and leg injuries; he also suffers from obstructive pulmonary disease. (ALJ Recon. Dec. at 1; Admin. R. Ex. 17B, 1D and 1E.) The ALJ denied Plaintiff's claim twice—in his initial decision on March 10, 2003 ("ALJ Decision") and upon reconsideration on January 6, 2006. (ALJ Dec. at 3; ALJ Recon. Dec. at 8; Admin. R. Ex. 1B and 7B.) In both opinions, the ALJ concluded Plaintiff is not disabled because he retains the ability to perform a significant number of jobs in the national economy. (Plaintiff's Brief at 4-5.)

Plaintiff injured his back while working on September 9, 1999. Plaintiff subsequently sought treatment for lower back pain, which was diagnosed as a disc herniation. (ALJ Dec. at 3; Admin. R. Ex. 1F, at 1.) Plaintiff claims he was homebound since September 9, 1999 as a result of his injuries. (ALJ Dec. at 2.) In September 1999 Plaintiff sought treatment for his disc herniation at the Orthopedic Association and was treated by two separate orthopedic surgeons, Dr. J. Lee Berger and Dr. Mark J. Ruoff, from October 27, 1999 to November 30, 2005. His initial visit was with Dr. Berger on October 27, 1999. (ALJ Dec. at 3.) After a review of the MRI on October 28, 1999, Dr. Berger advised that Plaintiff could return to work on light duty, with no lifting over 15 pounds and no repetitive bending. (ALJ Dec. at 3; Admin. R. Ex. 11F, at 68.) Dr. Berger prescribed a treatment regimen of medication, physical therapy and steroid injections. (ALJ Dec. at 3.) Plaintiff continued

2

to complain of lower back pain through December 1999. (ALJ Dec. at 3; Admin. R. Ex. 11F, at 77-87.) On January 4, 2000, Plaintiff's EMG studies were normal and nerve conduction tests were negative; Dr. Berger cleared Plaintiff to go back to work on February 14, 2000, but instructed him not to lift anything greater than 30 pounds. (ALJ Dec. at 3; Admin. R. Ex. 11F, at 88 and 89.) Plaintiff worked in a strenuous position as a fork lift driver and delivery person at Enterprise Corrugated Cont. prior to his injury. (ALJ Dec. at 3; Admin. R. Ex. 2E, at 1 and 2F, at 2.) The record does not discern the dates of Plaintiff's post-injury employment, only that he worked as a machine operator for part of 2000 and earned $3,358. (ALJ Dec. at 3.)

On November 29, 2000, Dr. Ruoff diagnosed Plaintiff with status post lateral fusion L2-L3 and L3-L4 levels and ilioinguinal nerve neuralgia. *Id.* at 4. Plaintiff was then referred to a urologist and advised to stay out of his previous, strenuous work as a delivery person. (ALJ Dec. at 4; Admin. R. Ex. 11F page 5.) The ALJ determined that Dr. Ruoff's diagnosis did not render Plaintiff "homebound" or unable to walk. (ALJ Dec. at 4.) The ALJ noted that Dr. Ruoff did not preclude Plaintiff from employment. *Id.*

The ALJ referenced the June 11, 2001 physical therapist finding that Plaintiff could not safely return to any job that required "prolonged positions." *Id.* at 5. The ALJ did not define prolonged positions. The decision emphasized, however, that three days later, Dr. Ruoff concluded that Plaintiff could perform sedentary work despite Plaintiff's statements that he "cannot sit" and "would rather apply for disability." (ALJ Dec. at 5; Admin. R. Ex. 2F page 1.)

The July 12, 2001 findings of Carl P. Giordano, MD, an orthopedic spine surgeon from whom Plaintiff sought treatment after being discharged from Dr. Ruoff's office in June 2001, that Plaintiff attained maximum improvement and should continue a narcotic medication regimen were also considered by the ALJ. (ALJ Dec. at 5; Admin. R. Ex. 10F.) Although the decision recognized

that Dr. Giordano concluded Plaintiff's employment was questionable, he did not specifically preclude sedentary work. (ALJ Dec. at 5.)

Significantly, subsequent to Plaintiff's July 12, 2001 consultation with Dr. Giordano, he did not seek any further treatment for his back injury until he returned to Dr. Ruoff on May 26, 2004—almost three years later.

Plaintiff's November 8, 2005 consultation with Dr. Ruoff was referenced in the ALJ's reconsideration decision; however, the ALJ found that this consultation occurred 17 months after Plaintiff's period of disability and was not relevant to Plaintiff's disability status prior to June 30, 2004, his last date insured. (ALJ Recon. Dec. at 5.) Thus, Dr. Ruoff's November 8, 2005 finding had no bearing on the ALJ's final determination. *Id.* at 6.

### III. Legal Standard

#### A. Standard of Judicial Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court must affirm the Commissioner's decision only if it is "supported by substantial evidence." *Doak v. Heckler,* 790 F.2d 26, 28 (3d Cir. 1986); *see also* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Stunkard v. Sec'y of Health & Human Serv.,* 841 F.2d 57, 59 (3d Cir. 1988) (quoting *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979)). The reviewing court must consider the totality of the evidence and then determine whether there is substantial evidence to support the Commissioner's decision. *See generally Taybron v. Harris,* 667 F.2d 412, 413 (3d Cir. 1981). Furthermore, the reviewing court is not "empowered to weigh the

evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan,* 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied,* 507 U.S. 924 (1993) (citing *Early v. Heckler,* 743 F.2d 1002, 1007 (3d Cir. 1984)).

In the determination of whether there is substantial evidence to support the Commissioner's decision, the reviewing court must consider the: "(1) objective medical facts; (2) diagnoses and medical opinions of examining physicians; (3) subjective evidence of pain and disability as described by Plaintiff and corroborated by others who have observed him; and (4) Plaintiff's age, educational background and work history." *Curtin v. Harris,* 508 F.Supp. 791, 793 (D.N.J. 1981) (citing *Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir. 1972)). When a medical opinion is consistent with other substantial evidence, it is given controlling weight. 20 C.F.R. §§ 416.927(c)(1), (d)(2) (2007). However, if a medical opinion is either inconsistent with other evidence in the case or is internally inconsistent, the Commissioner will "weigh all the evidence [to decide] whether [the claimant] is disabled..." 20 C.F.R. § 416.927(c)(2). Furthermore, issues which are dispositive in deciding the claimant's eligibility for disability benefits will be decided by the Commissioner based on his role as an adjudicator, rather than based on a physician's medical opinion. Soc. Sec Rul. 96-5p (1996); 20 C.F.R. § 416.927(e).

However, the district court "cannot exercise [its] duty of review unless [it is] advised of the considerations underlying the action under review ...." *Cotter v. Sec'y of Health & Human Serv.,* 642 F.2d 700, 705 note 7 (3d Cir. 1981). Therefore, "the grounds upon which the administrative agency acted [must] be clearly disclosed and adequately sustained" before this Court can review the ALJ's decision. *Id.*

## B. Standard for Determining Eligibility of Disability Benefits

An individual may be entitled to Social Security benefits upon a finding of disability by demonstrating that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§ 423(d)(1)(A); *see also, e.g.*, 42 U.S.C. § 1382c(a)(3)(A); *see generally Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). A disabling impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). An individual will be deemed to be disabled "only if [his] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in *any other kind of substantial gainful work* which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B) (emphasis added).

In determining whether an individual is disabled, the Social Security Administration has established a five-step evaluation process. 20 C.F.R. § 404.1520(a)(1); *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). First, if the claimant is currently engaged in substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant does not suffer from a "severe" impairment, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). Third, if the claimant suffers from an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and the duration requirement is satisfied, he is automatically eligible for benefits. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant does not suffer from a listed impairment or its medical equivalent, the Commissioner will proceed to the next step. 20 C.F.R. § 404.1520(e). In step four, if the Commissioner finds that

6

the claimant retains the "residual functional capacity" ("RFC") to perform his past relevant work, he is not eligible for disability benefits. 20 C.F.R. § 404.1520(a)(4)(iv). Fifth and finally, if the claimant, given his medical impairments, age, education, past work experience and residual functional capacity, can perform other work that exists in significant numbers in the national economy, he is not disabled and is not entitled to benefits. 20 C.F.R. § 404.1520(a)(4)(v). The burden is on the claimant to prove the first four factors, but once the claimant has demonstrated that he is unable to perform his former job, the burden shifts to the Commissioner "who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability." *Burnett v. Commissioner of Social Security Administration,* 220 F.3d 112, 118 (3d Cir.2000) (quoting *Plummer v. Apfel,* 186 F.3d 422, 428 (3d Cir. 1999)).

## IV. Discussion

With respect to the first two test prongs, the ALJ found and the parties do not dispute, that: (1) Plaintiff had not engaged in substantial gainful activity since September 9, 1999, (ALJ Recon. Dec. at 2); (2) Plaintiff had a severe impairment, *Id.* at 3; (3) Plaintiff did not retain the RFC to perform his past relevant work, *Id.*; and (4) Plaintiff could perform other work—sedentary work—that exists in significant numbers in the national economy. *Id.* Consequently, the question before this Court is whether the ALJ properly determined at step three that Plaintiff was not disabled and at step four that Plaintiff does have the RFC to perform other work.

Plaintiff alleges that the ALJ rejected his claim for DIB without substantial evidence to support his decision. Specifically, Plaintiff argues that, in step three of the Commissioner's analysis, the ALJ did not provide an adequate rationale for his analysis and improperly rejected Dr. Giordano's medical opinion. (Pl.'s Br. at 9-10). In addition, he asserts that the ALJ improperly rejected his subjective finding that he was unable to sit very long. *Id.* at 13. This Court disagrees.

7

## A. The ALJ Used Substantial Evidence to Determine that Plaintiff was not Disabled

The ALJ's determination of Plaintiff's ineligibility for disability insurance benefits was based on substantial evidence. This Court affirms the ALJ's decision based on the following conclusions: (1) Plaintiff did not prove his back impairment was among the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (2) a discussion of a specific "listed impairment" is unwarranted; (3) the ALJ sets forth a substantial analysis of the medical evidence; (4) the ALJ properly considered all physician testimony in concluding Plaintiff could perform sedentary work; (5) the ALJ is not required to obtain additional evidence because he did not reject or discredit the treating physician's opinion; and (6) the ALJ properly considered Plaintiff's testimony that he could not sit very long. Thus, this Court affirms the ALJ's decision that Plaintiff could perform sedentary work prior to June 30, 2004.

### 1. ALJ provided a detailed record and analysis of the substantial evidence.

The Third Circuit held in *Jones* that the ALJ does not need to specify a listed impairment as long as there is sufficient evidence in the record to allow for a "meaningful judicial review." *Jones*, 364 F.3d at 505. A meaningful judicial review "requires more than just a conclusory statement that a claimant does not meet the listings." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (citing *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 119-120 (3d Cir. 2000)). The Appellate Court in *Burnett* specifically stated that "[T]he ALJ shall fully develop the record and explain his findings at step three, including an analysis of whether and why the Plaintiff's impairments are or are not equivalent in severity to one of the listed impairments." *Burnett*, 220 F.3d at 120. In other words, the ALJ must provide an in-depth analysis to support its conclusion that claimant's impairment does not entitle him to benefits. In the present case, the ALJ's decision

included a review of both the detailed record of the Plaintiff's medical history and Plaintiff's testimony. In his decision, the ALJ set forth the following pertinent treatment notes:

1. After review of the October 27, 1999 MRI, Dr. Berger advised that Plaintiff could return to work the following day on "light duty, with no lifting over 15 pounds and no repetitive bending." (ALJ Dec. at 3.)
2. Electrodiagnostic studies performed on January 4, 2000 showed "normal EMG and nerve conduction studies," and Plaintiff was advised that "he could return to work on February 14, 2000 but not to lift anything greater than 30 pounds." *Id.*
3. Plaintiff did not return to his previous employment, rather he worked as a machine operator at Ockanite for part of 2000. (ALJ Dec. at 3, Admin. R. Ex. 2E, at 1.)
4. In June 2001, Dr. Ruoff concluded Plaintiff could perform sedentary work, but Plaintiff preferred to apply for disability. (ALJ Dec. at 5.) At this point, Dr. Ruoff discharged the Plaintiff from his care. Plaintiff did not seek additional treatment from Dr. Ruoff until May 2004. *Id.*
5. On July 12, 2001, Dr. Giordano found Plaintiff's condition reached maximum improvement; however, he did not specifically preclude sedentary work. *Id.*

The ALJ compared and contrasted medical evidence from both Dr. Ruoff and Dr. Giordano. Dr. Ruoff was the Plaintiff's treating physician from 2000 to 2005, while Dr. Giordano treated Plaintiff on only one occasion. Both physicians determined that Plaintiff reached maximum improvement and should continue a narcotic medication regimen. *Id.* Dr. Ruoff concluded that Plaintiff could perform sedentary work; Dr. Giordano did not comment on whether Plaintiff could or could not perform sedentary work. *Id.*

Following Plaintiff's fusion surgery on September 25, 2000, his medical records indicate that his medical condition improved; however, he was directed to refrain from his previous, strenuous work as of November 29, 2000. *Id.* at 3-4. The ALJ fully developed the record and explained his findings consistent with the *Burnett* standard. In sum, the ALJ provided more than a conclusory statement as to why he denied Plaintiff's request for benefits. *Fargnoli*, 247 F.3d at 40.

## 2. Proper consideration and weight was given to the medical source opinions.

The ALJ properly explained his rejection of Dr. Giordano's opinion regarding Plaintiff's employability. After a review of the medical evidence, the ALJ found Dr. Giordano reached the same medical conclusion as Dr. Ruoff, the treating physician: "[T]he claimant had reached maximum improvement and continued to suffer from a back injury." (ALJ Dec. at 4.) The ALJ noted that Dr. Giordano doubts that Plaintiff is going to be employable, but Dr. Giordano did not provide any documentation that Plaintiff's impairment rendered him disabled under 20 C.F.R. § 404.1520. *Id.*

Dr. Giordano failed to make a concrete determination as to Plaintiff's employability. However, Dr. Ruoff determined Plaintiff would be able to perform some type of sedentary work. *Id.* at 5. Where a treating source's opinion on the nature and severity of a claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," it will be given "controlling weight." 20 C.F.R. § 404.1527(d)(2). Dr. Ruoff's opinion was well-supported by medical evidence and did not contradict Dr. Giordano, thus it was within the ALJ's discretion to give controlling weight to Dr. Ruoff's opinion.

The ALJ's decision is further supported by the longevity of Dr. Ruoff's treatment compared to Plaintiff's sole visit to Dr. Giordano. More weight can be given to a treating source's opinion because they are likely to provide a "detailed, longitudinal picture of your medical impairment" and a perspective that cannot be obtained from an individual examination. *Id.* Dr. Giordano conducted only a single examination of Plaintiff on July 12, 2001 and Plaintiff was discharged from his office immediately thereafter. It would be improper to assign greater weight to Dr. Giordano's medical report. Dr. Ruoff's medical opinion, however, should receive more weight due to the longevity of

his treatment of Plaintiff; he treated the Plaintiff intermittently from 1999 to 2005. The ALJ's decision to give Dr. Ruoff's medical opinion probative weight was proper. *Schonewolf v. Callahan*, 972 F. Supp. 277, 286 (D.N.J.1997).

Similarly, the physical therapist's statement that Plaintiff could not safely return to his job does not warrant significant weight. Three days after Plaintiff's visit to Margarida Villalonga, a physical therapist, Dr. Ruoff noted Plaintiff "would be able to do some type of sedentary work." (ALJ Dec. at 5.) The ALJ correctly gave greater weight to Dr. Ruoff's medical opinion; his treatment of Plaintiff before and after the physical therapist visit was consistent in finding Plaintiff capable of performing sedentary work. Further, the ALJ found Plaintiff's own statement that he "would rather apply for disability," to be significant and demonstrative of Plaintiff's unwillingness to perform sedentary work rather than an inability to work due to a physical impairment. *Id.*

Plaintiff's final argument that the ALJ failed to explain his rejection of Plaintiff's alleged inability to sit very long does not constitute judicial error. Dr. Ruoff determined Plaintiff could perform sedentary work despite Plaintiff's statements to him that he "cannot sit" and "would rather apply for disability." *Id.* The ALJ's review of Plaintiff's subjective testimony was proper. The record reflects that the ALJ gave sufficient weight to Plaintiff's statement, concluding that Plaintiff's complaint that he can not sit to be subjective, exaggerated, and not corroborated by medical evidence. *Id.* at 6.

## B. ALJ's treatment of November 2005 testimony was proper.

On November 30, 2005, Dr. Ruoff diagnosed Plaintiff as disabled and unemployable. ALJ's treatment of this evidence was proper; the ALJ noted this visit was outside of Plaintiff's last insured date, June 30, 2004, and therefore had no bearing on the ALJ's determination that Plaintiff was not disabled. After the November 8, 2005 office visit, Dr. Ruoff diagnosed Plaintiff with post-

laminectomy syndrome, a new condition, and remarked "*at this time*, I feel he is disabled, is unemployable. I feel this is a permanent situation." (Pl.'s Br. at 8) (emphasis added). Dr. Ruoff's use of the phrase "at this time" must not be misconstrued to refer to the entire period of time Plaintiff was treated by Dr. Ruoff. The ALJ noted this "evaluation was not given retrospective effect." (ALJ Recon. Dec. at 5.) This Court finds no basis to suggest intent to the contrary and defers to the plain meaning of the phrase.

## V. Conclusion

As substantial evidence exists in the record to support the ALJ's findings and determinations, they are conclusive. For the foregoing reasons, the ALJ's decision is thus AFFIRMED.

**SO ORDERED.**

s/Susan D. Wigenton, U.S.D.J.